# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DARNIAL CRAIG,

                              Plaintiff,

v.

TREVOR KLEMMER and DANIEL CUSHING,

                              Defendants.

Case No. 17-CV-288-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiff Darnial Craig ("Craig"), a prisoner housed at Waupun Correctional Institution ("WCI"), brings this action against Defendants Trevor Klemmer ("Klemmer") and Daniel Cushing ("Cushing"), correctional sergeants at WCI, pursuant to 42 U.S.C. § 1983. Craig claims that Klemmer used excessive force against him in violation of the Eighth Amendment during a September 24, 2016 incident at WCI and that Cushing failed to intervene to prevent Klemmer's use of excessive force. (Docket #1 at 8-9 and #8 at 7). Craig also asserts Wisconsin state law claims, based on the same incident, for battery and negligence. *Id.*

The case now comes before the Court on cross motions for summary judgment, both of which have been fully briefed. (Docket #16-19 and #21-35). Craig moves for summary judgment on all of his claims against the defendants. (Docket #16-19). The defendants initially moved for summary judgment on all claims as well, *see* (Docket #21-28), but have since withdrawn their request for summary judgment as to Craig's Eighth Amendment excessive force claim against Klemmer, *see* (Docket #32 at 1).

The defendants concede that factual disputes preclude resolution of that claim at this stage of the case. *Id.*

For the reasons explained below, the Court will grant the defendants' motion for summary judgment as to all claims except Craig's excessive force claim against Klemmer and will deny Craig's motion for summary judgment in its entirety. Craig's excessive force claim will proceed to trial at a date to be set by the Court in a separate order.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3.  **RELEVANT FACTS**

During all times relevant to this suit, Craig was an inmate and Klemmer and Cushing were correctional sergeants at WCI in Waupun, Wisconsin. In the fall of 2016, Craig was on clinical observation status in the restrictive housing unit at WCI. According to Craig, he was mentally unstable. He was on a hunger strike, and was deemed to be dangerous to himself.

On September 24, 2016, Craig requested medical attention due to exposure to an incapacitating agent that had been used on another inmate in a nearby cell. Klemmer and another officer escorted Craig to a shower cell so that Craig could be evaluated by nursing staff. Craig complains that the leg restraints used during this escort were too tight and that Klemmer pushed him into the shower cell.

After Craig was seen by a nurse and medically cleared to return to his cell, Cushing directed Klemmer and another sergeant, Thomas Nelson ("Nelson"), to escort Craig back to his cell. Due to Craig's status at the time, his arms were to be restrained behind his back during the escort, his legs were to be restrained, and he was to be escorted by two officers, with each officer holding one of Craig's arms. Craig asked Cushing to have someone other than Klemmer conduct the escort. Craig claims that he informed Cushing that he was concerned for his safety because Klemmer had pushed him into the shower and Klemmer had a propensity to attack inmates while in restraints, but Cushing disputes that Craig provided those details. Cushing denied Craig's demand and sent Klemmer and Nelson to conduct the escort. Craig resisted, asking for a "white shirt" (a supervisor) when the sergeants arrived at the shower to take him back to his cell.

The parties dispute what happened next. According to Craig, the sergeants forcefully dragged him out of the shower while he was in full restraints. Klemmer then began to propel Craig forward faster than he was reasonably able to walk in the tight leg restraints. Craig pleaded to slow down, but instead Klemmer slammed Craig face-first onto the concrete floor and slammed his face into the floor a second time by using his forearm and full body weight. Craig experienced excruciating pain and became "semi-conscious." (Docket #34 at 11). He suffered a laceration to his chin that bled profusely, his eye was injured, and his blood pressure and heart rate dropped suddenly.

The defendants tell the story differently. They contend that shortly after the escort back to his cell began, Craig turned his body and had to be told to face forward. Craig then responded by cursing at the officers, stating that he would not return to his cell, and physically resisting the escort by pushing his body backward. He then went limp by buckling his knees and refusing to walk. He intentionally used his body weight to pull the sergeants to the ground. The sergeants then held Craig down until other staff could respond, and Craig finally became compliant when other staff arrived and he was escorted to a strip cell.

Here the parties' stories converge. They agree that a nurse went to the strip cell to evaluate Craig and determined that he would be sent to a hospital because he had low blood pressure, a low heart rate, he had been on a hunger strike for a month, and had sustained a laceration on his chin during the escort back to his cell. At the hospital, Craig was given two nylon sutures for the two-centimeter laceration on his chin. He was discharged the same day after his blood pressure had returned to a normal range. The

stitches were removed seven days later, at which time the wound was healing normally.

Craig served a notice of claim on the Wisconsin Attorney General regarding the September 24, 2016 incident, but the notice was not mailed until February 13, 2017, which is 142 days after the incident. After the Wisconsin Department of Justice received Craig's notice of claim, the Attorney General did not expressly deny the claim before Craig filed this action fifteen days later on February 28, 2017.

4. **ANALYSIS**

Craig's complaint alleges two constitutional claims, one for use of excessive force, in violation of the Eighth Amendment, against Klemmer and one for failure to intervene to protect Craig from Klemmer's use of excessive force, in violation of the Eighth Amendment, against Cushing. (Docket #1 at 8-9 and #8 at 7). Craig also alleges two Wisconsin state law claims, for battery and negligence, against Klemmer and one, negligence, against Cushing. *Id.*

For the reasons stated below, all of Craig's claims, save his excessive force claim, must be dismissed. His excessive force claim will proceed to a jury trial.

   4.1 **Excessive Force**

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). When an official is accused of using excessive force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012). Several factors are relevant to this determination,

including the need for force, the amount applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury caused to the prisoner. *Hudson*, 503 U.S. at 7; *Caffey v. Maue,* 679 F. App'x 487, 491 (7th Cir. 2017).

In evaluating whether the record here supports a finding that Klemmer applied force maliciously to cause harm, the Court is mindful that "[j]ails are dangerous places, and it is without rational dispute that security officials are justified in maintaining decorum and discipline among inmates to minimize risks to themselves and other prisoners." *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). "In many circumstances—often when faced with aggression, disruption, or physical threat—compelling compliance with an order is a valid penological justification" for the use of force. *Id.* at 477. But "[w]hat must be decided in each case . . . is whether the facts surrounding the [use of force]—as [the plaintiff] portrays them—demonstrated actual malice or sadistic purpose on the part of the [defendant]." *Id.*

The Seventh Circuit's decision in *Guitron v. Paul*, 675 F.3d 1044 (7th Cir. 2012), is instructive. There, the court reviewed the district court's dismissal of the inmate's complaint upon screening. According to the complaint (and additional facts set forth in the inmate's appellate brief), the defendant officer, while escorting the inmate to segregation, saw other inmates in the hallway and ordered the plaintiff to stand against the wall. *Id.* at 1045. Instead of complying, the plaintiff replied "[t]hat's bogus man" and, at that point, the officer bent the plaintiff's wrist. *Id.* The plaintiff remained defiant, and the officer slammed the plaintiff against the wall. *Id.* The Seventh Circuit affirmed dismissal of the complaint, finding that because the inmate did not dispute that he "disobeyed a command that was

designed to maintain order within the prison," there existed sufficient justification for the use of force. *Id.* at 1046.

In this case, Craig argues that Klemmer pushed him into the shower cell, forced him to walk too quickly in leg restraints that were too tight, and slammed him face-first into the ground when he asked to slow down during the escort. He argues, too, that Klemmer had no penological justification to use any of this force because Craig had not acted with aggression, caused a disruption, or disobeyed a command intended to maintain order in the prison.

However, Klemmer has presented evidence to the contrary. For example, in response to Craig's contention this his leg restraints were too tight, causing him pain and preventing him from walking normally, Klemmer points to the observation by another correctional officer that Craig was indeed able to walk normally in the restraints immediately after the incident. (Docket #33 at 3 and #18 at 28). In response to Craig's contention that Klemmer slammed his face into the ground, Klemmer points to incident reports written by Klemmer and Nelson that day explaining that Craig cursed at them and resisted their commands that he walk back to his cell before eventually falling to the ground using "dead weight tactics." (Docket #33 at 3-4 and #18 at 22, 25). Klemmer claims that he stabilized Craig on the ground using the least amount of force necessary. (Docket #33 at 3-4 and #18 at 25).

The only portion of the September 24, 2016 incident for which Klemmer does not present a dispute of material fact is his shoving of Craig into the shower cell. *See generally* (Docket #33 at 3-4). Craig's own evidence on this issue, though, is not sufficient to establish as a matter of law that the shove was constitutionally impermissible. He states in his declaration that

"[w]hen I reached the Upper C-Wing shower stall, Sgt. Trevor Klemmer pushed me into the shower stall." (Docket #18 at 1). Much more is required to establish a constitutional violation. *See Guitron*, 675 F.3d at 1045–46 (citing *Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense.").

In contrast to *Guitron*, where the parties agreed that the plaintiff was insubordinate, here Craig maintains, and Klemmer disputes, that Craig did nothing to provoke Klemmer. Because their testimony differs in this critical respect, the question of what really happened on September 24, 2016 must be posed to the jury and not prejudged by the Court. Craig's motion for summary judgment as to this claim will, therefore, be denied.

### 4.2 Failure to Intervene

For his Eighth Amendment claim against Cushing, Craig argues that Cushing failed to intervene to prevent Klemmer from using excessive force against him. "An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know . . . that excessive force was being used . . . *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (emphasis in original). Liability attaches if the officer "approved, condoned, or turned a blind eye to [another officer's] allegedly

unconstitutional actions." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003).

As a threshold matter, the Court notes that Craig can succeed on a failure to intervene claim only if he proves an underlying constitutional violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). In other words, Cushing can be liable for failing to intervene to stop Klemmer's use of excessive force only if Klemmer indeed used excessive force. As explained above, whether Klemmer used excessive force is the subject of disputes of fact to be resolved by a jury.

However, even if Craig proves at trial that Klemmer used excessive force against him, his claim against Cushing cannot succeed. Even when read in a light most favorable to Craig, the record does not suggest that Cushing had knowledge of facts that would cause him to believe that Klemmer was going to use excessive force during the escort.

Craig's claim against Cushing is based on the fact that (1) Craig informed Cushing that he was concerned for his safety if Klemmer was ordered to escort Craig back to his cell because, according to him, Klemmer had pushed him earlier and had a propensity to attack other inmates, and (2) Cushing ordered Klemmer to escort Craig back to his cell anyway. (Docket #17 at 8-9). Cushing did not witness the alleged use of force. (Docket #35 at 3).

Cushing submitted a declaration stating that he did not subjectively believe Craig was in any danger when he directed Klemmer to escort Craig back to his cell. *Id.* at 3-5. Cushing states that although Craig did demand that someone other than Klemmer conduct the escort, he directed Klemmer and Nelson to conduct the escort because the unit was very busy at the time, these were the staff members available, and Craig gave him no legitimate

unconstitutional actions." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003).

As a threshold matter, the Court notes that Craig can succeed on a failure to intervene claim only if he proves an underlying constitutional violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). In other words, Cushing can be liable for failing to intervene to stop Klemmer's use of excessive force only if Klemmer indeed used excessive force. As explained above, whether Klemmer used excessive force is the subject of disputes of fact to be resolved by a jury.

However, even if Craig proves at trial that Klemmer used excessive force against him, his claim against Cushing cannot succeed. Even when read in a light most favorable to Craig, the record does not suggest that Cushing had knowledge of facts that would cause him to believe that Klemmer was going to use excessive force during the escort.

Craig's claim against Cushing is based on the fact that (1) Craig informed Cushing that he was concerned for his safety if Klemmer was ordered to escort Craig back to his cell because, according to him, Klemmer had pushed him earlier and had a propensity to attack other inmates, and (2) Cushing ordered Klemmer to escort Craig back to his cell anyway. (Docket #17 at 8-9). Cushing did not witness the alleged use of force. (Docket #35 at 3).

Cushing submitted a declaration stating that he did not subjectively believe Craig was in any danger when he directed Klemmer to escort Craig back to his cell. *Id.* at 3-5. Cushing states that although Craig did demand that someone other than Klemmer conduct the escort, he directed Klemmer and Nelson to conduct the escort because the unit was very busy at the time, these were the staff members available, and Craig gave him no legitimate

unconstitutional actions." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003).

As a threshold matter, the Court notes that Craig can succeed on a failure to intervene claim only if he proves an underlying constitutional violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). In other words, Cushing can be liable for failing to intervene to stop Klemmer's use of excessive force only if Klemmer indeed used excessive force. As explained above, whether Klemmer used excessive force is the subject of disputes of fact to be resolved by a jury.

However, even if Craig proves at trial that Klemmer used excessive force against him, his claim against Cushing cannot succeed. Even when read in a light most favorable to Craig, the record does not suggest that Cushing had knowledge of facts that would cause him to believe that Klemmer was going to use excessive force during the escort.

Craig's claim against Cushing is based on the fact that (1) Craig informed Cushing that he was concerned for his safety if Klemmer was ordered to escort Craig back to his cell because, according to him, Klemmer had pushed him earlier and had a propensity to attack other inmates, and (2) Cushing ordered Klemmer to escort Craig back to his cell anyway. (Docket #17 at 8-9). Cushing did not witness the alleged use of force. (Docket #35 at 3).

Cushing submitted a declaration stating that he did not subjectively believe Craig was in any danger when he directed Klemmer to escort Craig back to his cell. *Id.* at 3-5. Cushing states that although Craig did demand that someone other than Klemmer conduct the escort, he directed Klemmer and Nelson to conduct the escort because the unit was very busy at the time, these were the staff members available, and Craig gave him no legitimate

reason to find another staff member to perform the escort. *Id.* Cushing does not recall Craig telling him that Klemmer has pushed him earlier and that Klemmer had a propensity to attack inmates. *Id.* at 3.

Even assuming the facts as Craig reports them are true, no reasonable juror could find that Cushing "approved, condoned, or turned a blind eye" to Klemmer's alleged use of excessive force. *Morfin*, 349 F.3d at 1001. Craig admits that Cushing was not present to witness (or stop) Klemmer's use of force. And Craig points to no authority suggesting that simply warning Cushing that he was afraid of Klemmer is sufficient to put Cushing on notice that Klemmer would in fact use excessive force against Craig during the escort back to Craig's cell.

Because Craig has produced "no evidence that [Cushing] knew [Klemmer] was intentionally injuring" Craig during the escort, his claim is doomed. *Montano v. City of Chicago*, 535 F.3d 558, 569–70 (7th Cir. 2008) (affirming grant of summary judgment to defendant who was present in squad driven by another officer who the plaintiffs alleged drove in a way that caused them harm because plaintiffs presented no evidence that the defendant knew the officer driving the squad was causing the plaintiffs harm). Defendants' motion for summary judgment as to Craig's failure to intervene claim against Cushing will be granted.

### 4.3 State law claims

Finally, Craig has alleged state law claims against Klemmer, for battery and negligence, and against Cushing, for negligence. The defendants contend that all of the state law claims fail because Craig did not fully comply with the requirements of Wisconsin Statues section 893.82, Wisconsin's notice of claim statute. Section 893.82 provides, in relevant part, that:

> [N]o civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties, . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

Wis. Stat. § 893.82(3).

The statute demands strict compliance. Wis. Stat. § 893.82(2m). Failure to comply requires dismissal of the claim. *Weinberger v. State of Wisconsin*, 105 F.3d 1182, 1188 (7th Cir. 1997) ("A complaint that fails to show compliance with § 893.82 fails to state a claim upon which relief can be granted."). "There is no equitable basis for partial or 'substantial' compliance[.]" *Id.* (citing *Oney v. Schrauth*, 541 N.W.2d 229, 233 (Wis. Ct. App. 1995)).

It is undisputed that Craig mailed a notice of claim regarding the September 24, 2016 incident to the Wisconsin Attorney General on February 13, 2017, which is 142 days after the incident. (Docket #30 at 10). The notice was late by twenty-two days. Craig acknowledges this, but argues that his late notice should be deemed timely because he was on observation status for a portion of the time between the September 24, 2016 incident and the deadline for filing a notice of claim. (Docket #29 at 3-4 and #30 at 10-11).

There is no equitable basis to excuse Craig's untimely notice. Whatever his reason for his inability to comply, noncompliance is fatal to his state law claims. *Weinberger*, 105 F.3d at 1188. Therefore, because Craig

did not comply with the strict requirements of Section 893.82, the defendants' motion for summary judgment on the state law claims will be granted and those claims will be dismissed.

5. **CONCLUSION**

As to Craig's state law claims and his failure to intervene claim against Cushing, the parties have presented no disputes of material fact, and the defendants have proven they are entitled to judgment as a matter of law. The Court must, therefore, grant the defendants' motion for summary judgment as to those claims. Because all claims against Cushing will be dismissed, Cushing will be dismissed as a defendant.

Craig's excessive force claim against Klemmer raises triable questions of fact. The claim ultimately rests on a credibility determination regarding Craig's and the defendants' versions of the events of September 24, 2016. On summary judgment, the Court cannot make such a determination. The Court must, therefore, deny Craig's motion for summary judgment as to the excessive force claim.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Docket #16) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Docket #21) be and the same is hereby **GRANTED in part** as to the state law claims and the failure to intervene claim against Defendant Daniel Cushing;

**IT IS FURTHER ORDERED** that the state law claims and the failure to intervene claim against Defendant Daniel Cushing (Docket #1) be and the same are hereby **DISMISSED**; and

**IT IS FURTHER ORDERED** that Defendant Daniel Cushing be and the same is hereby **DISMISSED** from this action.

Dated at Milwaukee, Wisconsin, this 15th day of February, 2018.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge